OPINION
Plaintiff-appellants Rudolf and Phyllis Weber appeal from a summary judgment rendered against them by the Montgomery County Court of Common Pleas on their claims against the City of Huber Heights and two of its Emergency Medical Technicians. The Webers contend that they established the existence of a genuine issue of material fact whether their claims were barred by statutory immunity.
We conclude that the Webers demonstrated the existence of a genuine issue of material fact upon which reasonable minds could find in their favor. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I
On June 19, 2000, Rudolf Weber and his wife, Phyllis Weber, filed a lawsuit against the Huber Heights City Council, the Huber Heights Mayor and Council members, the Huber Heights Fire Department, as well as Huber Heights Emergency Medical Technicians ("EMT's"), Steve Hupp and Glenn Brandenburg. The suit was based upon Mr. Weber's allegation that the actions of the Huber Heights EMT's, in responding to the Webers' 911 phone call, constituted willful and wanton misconduct resulting in injury to him. Specifically, Mr. Weber contends that the EMT's failed to assist him to the ambulance stretcher and failed to transport him to a hospital despite the fact that he told them that he thought he was having a stroke. Mrs. Weber alleged that the conduct of the EMT's resulted in the loss of her husband's consortium.
After filing an answer denying liability, the defendants conducted depositions of the Webers during which the following was adduced.
On September 23, 1998, Rudolf Weber, and his wife, Phyllis Weber, were at their home in Huber Heights. Mr. Weber was in the living room watching television while Mrs. Weber was in the bedroom working on her computer. According to Mrs. Weber's deposition, at approximately 10:00 p.m., Mr. Weber summoned her to the living room. Upon entering the room, she observed that Mr. Weber had vomited. Mrs. Weber testified that Mr. Weber informed her that he could not get up and that she should call for emergency help. Mrs. Weber testified that when she called 911, she informed the dispatcher that her husband thought he was having a stroke.
Mrs. Weber testified that the EMT's arrived at the residence within fifteen minutes, and that they brought a stretcher into the house. She testified that she went into another room while they examined her husband. She testified that she heard the EMT's ask Mr. Weber whether he wanted to go to the hospital. She further testified that the EMT's told Mr. Weber that he would have to get up and walk to the stretcher. According to her testimony, Mr. Weber attempted to get up and go to the stretcher, but informed the EMT's that he was unable to do so. She testified that the EMT's then informed her that Mr. Weber's vital signs were "fine" and that he was suffering from a "panic attack."
Mrs. Weber testified that she did not disagree with the EMT's, but did think that something else besides anxiety was wrong with her husband.[1]
Mrs. Weber called Mr. Weber's parents, but due to the late hour hung up before they answered. She also called Mr. Weber's daughter, but no one answered. After determining that Mr. Weber was not getting worse, Mrs. Weber went to sleep in the bedroom.
Mr. Weber's daughter placed a phone call to her father the next morning. Mr. Weber answered the phone, but he could not hear anything. Mrs. Weber was awakened that morning by Mr. Weber's daughter who came to check on her father. Mrs. Weber testified that the damage which occurred to Mr. Weber between the time she went to sleep and the next day was "obvious." Mrs. Weber testified that Mr. Weber's daughter transported him to his doctor's office, and that she followed a few minutes later. When Mrs. Weber arrived at the doctor's office, an ambulance had been summoned to transport Mr. Weber to the hospital. Upon arriving at the hospital, it was determined that Mr. Weber had suffered a stroke.
According to Mr. Weber's deposition, he told the EMT's that he was suffering from double vision, and that he thought he was having a stroke. He testified that when asked, he told the EMT's that he wanted to go to the hospital. Mr. Weber testified that the EMT's told him he would have to walk to the stretcher. He testified that he tried, but was unable to do so. After that, the EMT's spoke to his wife and left.
The defendants filed a motion for summary judgment upon the ground that they were statutorily immune from suit. In support of their motion, they filed the affidavit of the Huber Heights Fire Chief, a copy of the report filed regarding the 911 call made by Mrs. Weber, and a copy of the "EMS Run Sheet." The EMS Run Sheet indicates that the EMT's checked Mr. Weber's vital signs and conducted a brief medical history, which revealed that Mr. Weber was experiencing vertigo, ringing in the ears, tingling in the fingertips, vomiting, and that he had "a hard time standing." The sheet indicates that the EMT's asked Mr. Weber which hospital he wanted to be transported to, but that Mr. Weber did not want to be transported to the hospital. The Run Sheet also indicated that the EMT's told the Webers to see a physician and to call back if he experienced any further problems.
The trial court granted the defendants' motion for summary judgment. In its decision, the trial court stated, in part, as follows:
 According to the report prepared by Defendants, Plaintiff Rudolf Weber's vital signs were normal. The report also indicates that Plaintiff Rudolf Weber did not want to be taken to the hospital. Although Plaintiffs assert that Defendants insisted that Plaintiff walk to the gurney, there has been no showing how such conduct rises to the level of willful or wanton conduct.
 From the summary judgment rendered against them, the Webers appeal.
 II
The sole assignment of error is as follows:
 THE COURT ERRED IN MAKING A DECISION ON A FACTUAL ISSUE, WHICH SHOULD HAVE BEEN DECIDED BY A JURY.
The Webers contend that the trial court erred by rendering summary judgment in favor of the City of Huber Heights and the EMT's. In support, they argue that the evidence establishes the existence of a genuine issue of material fact whether the defendants acted in a wanton and willful manner, which would take them outside the scope of statutory immunity from municipal liability. Specifically, Mr. Weber argues that the EMT's acted in a wanton and willful manner because they did not assist him to the ambulance and they failed to transport him to a hospital despite his request that they do so.
Pursuant to R.C. 4765.49(A), emergency medical technicians ("EMT") are not "* * * liable in damages in a civil action for injury * * * resulting from the individual's administration of emergency medical services, unless the services are administered in a manner that constitutes willful or wanton misconduct." Likewise, a political subdivision that provides emergency medical services is not liable for injuries arising from the actions of its EMT's unless the services are provided in a manner that constitutes willful or wanton misconduct. R.C. 4765.49(B).
This court has set forth the following definition of "wilful and wanton misconduct"
 Wilful misconduct is intentionally doing that which is wrong or intentionally failing to do that which should be done. The circumstances must also disclose that the defendant knew or should have known that such conduct would probably cause injury to the plaintiff. It is a general rule that every person may be presumed to intend the natural and probable consequences of his acts. Wilful misconduct implies an intentional disregard of a clear duty or of a definite rule of conduct, a purpose not to discharge such duty, or the performance of wrongful acts with knowledge of the likelihood of resulting injury. Knowledge of surrounding circumstances and existing conditions is essential; actual ill will or an intent to injure need not be present.
 Wanton misconduct must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be aware, from his knowledge of such circumstances and conditions, that his conduct will probably result in injury. Wanton misconduct implies a failure to use any care for the plaintiff and an indifference to the consequences, when the probability that harm would result from such failure is great, and such probability is known, or ought to have been known, to the defendant.
 Moreover, this court has defined "wilful and wanton misconduct" as "behavior demonstrating a deliberate or reckless disregard for the safety of others." Reynolds v. City of Oakwood (1987), 38 Ohio App.3d 125, 127.
 Bedwell v. Physio-Control Corp. (Jan. 5, 1991), Miami App. No. 89-CA-67, unreported, citations omitted.
Our review of the appropriateness of summary judgment is de novo. The standard of review in summary judgment cases is well-established. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370.
From our reading of the trial court's decision, it appears that the summary judgment is based upon the court's finding that the EMT's did not act with willful or wanton misconduct because Mr. Weber's vital signs were normal on examination and that he did not want to be taken to the hospital.
In our view, the evidence in the record, when viewed in a light most favorable to the plaintiffs, does not support these findings. We find nothing in the EMS Run Sheet to support the trial court's finding that the information recorded regarding Mr. Weber's vital signs indicated that the signs were "normal." Without medical testimony, it is impossible to discern whether the vitals were normal. Furthermore, although the EMS Run Sheet does indicate that Mr. Weber stated that he did not want to be transported to the hospital, the testimony of the Webers contradicted this. These are questions of fact for determination by a jury.
The City and the EMT's urge us to affirm the judgment even if we conclude that the trial court's reasoning is erroneous, because the evidence in the record, when viewed in a light most favorable to the plaintiffs, supports a finding that the conduct of the EMT's did not rise to the level of willful and wanton misconduct. However, we cannot say, based on the record before us, that summary judgment is appropriate.
If a jury were to find that the EMT's believed that Mr. Weber was merely having a panic attack, or that his symptoms did not indicate that he was having a stroke, the alleged failure of the EMT's to transport Mr. Weber to the hospital would not, in our view, constitute willful and wanton misconduct. Even if a jury were to find that the EMT's misdiagnosed Mr. Weber as not likely to have been suffering a stroke, and declined to transport him based upon this incorrect diagnosis, we conclude that their failure to transport Mr. Weber under these circumstances would constitute negligence at most, not willful and wanton misconduct. However, if a jury were to find from all of the evidence, viewed in a light most favorable to the plaintiffs, and drawing all reasonable inferences from that evidence in the plaintiffs' favor, that the EMT's thought that Mr. Weber was having a stroke when they arrived at his home, then reasonable minds could find that the failure to transport him under those circumstances was willful and wanton misconduct. The proper factual determination upon which these legal conclusions rest is a genuine issue of material fact upon which reasonable minds might disagree, based upon the evidence in this record, viewed in a light most favorable to the plaintiffs. Accordingly, the assignment of error is sustained.
 III
The sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 _______________ FAIN, J.,
YOUNG, J., concur.
GRADY, J., dissenting.
[1] Mrs. Weber testified that she is a registered nurse.